IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABDUL BROWN, DP-2655,  )  | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | Civil Action No. 05-969 |
| ) | |
| PENNSYLVANIA DEPARTMENT OF ) | |
| CORRECTIONS, et al., ) | |
|     Defendants. ) | |

Report and Recommendation

I. Recommendation:

It is respectfully recommended that the Motion for Summary Judgment submitted on behalf of defendant Saavedra (Docket No. 94) be denied and that the motion for Summary Judgment submitted on behalf of the Commonwealth defendants (Docket No. 112) be granted.

II. Report:

Presently before the Court for disposition are Motions for Summary Judgment submitted on behalf of defendant Saavedra and the Commonwealth Defendants.[1]

Abdul Brown, an inmate at the State Correctional Institution - Fayette has presented a civil rights complaint which he has been granted leave to prosecute against the Pennsylvania Department of Corrections, thirty-one employees of that department (collectively the

---

[1] The Commonwealth defendants are Jeffrey A. Beard, John S. Shaffer, Lance Couturier, Fred Maue. Sharon Burks, Harry Wilson, Mark Krysevig, Linda Harris, Carol Scire, Darlene Linderman, Robert Tretinik, Edward Manchas, Michael Zaken, Gary Gallucci, Daniel Hooper, Gregory Mohring, Robert Stafford, Mark Mozingo, Katrina Shiver, Donna Vilcoss, Mike Piovarchy, Brian Petrosky, James Reed, Ray A. Barnes, Adam Snyder, Dan Evans, Halley, Richter, Keefer, Kremposky and Abrams.

Commonwealth defendants) and two other individuals, Dr. Saavedra and Physician's Assistant Christopher Meyer.[2]

While verbose and expressing the plaintiff's general dissatisfaction with conditions at the prison, the plaintiff does set forth some allegations of particular concern. Specifically, he alleges that on December 12, 2004, Mohring, Stafford, Zaken and Gallucci threatened to keep him housed in the Long Term Segregation Unit ("LTSU") if he did not withdraw a pending lawsuit (¶ 36); that on February 9, 2005 he was assaulted by Mohring, Stafford, Monzingo, Barnes, Snyder, Evans, Reed, Petrosky, Richter and Halley and deprived of food and water for seven days, and strapped into a chair in retaliation for litigation (¶¶ 40-46); that Shiver, Vilcoss and Piovarchy denied him medical treatment after he was assaulted (¶ 47); that Richter and Stafford assaulted him while he was strapped in the chair (¶ 55); that Saavedra removed the plaintiff from his psychotropic medication in retaliation for plaintiff filing lawsuits (¶¶ 57-58); that Reed and Petrosky forced him to use a filthy shower which resulted in him contracting a foot fungus (¶ 59); that in retaliation for his litigation, the plaintiff's family visit was shortened by Zaken (¶ 62); that Gallucci tampered with his legal materials (¶¶ 63-64); that Hooper and Keefer stole his incoming personal and legal mail (¶ 65); that Linderman and Kremposky destroyed his mail (¶ 66); that Wilson, Scire and Manchas created false entries in his prison record (¶ 71); that Scire has a policy of depriving certain prisoners of an impartial investigation into incidents in which they are involved (¶ 74); that Beard, Shaffer and Wilson directed that plaintiff be placed in a strip cell in retaliation for his litigation (¶¶ 83-84) and that Beard, Shaffer, Wilson, Zaken and Abrams have

---

[2] Summary Judgment was granted on behalf of defendant Chris Meyer on November 13, 2006.

directed that the plaintiff's cell be changed every thirty days so as to psychologically torment him. These as well as other allegations in the complaint are said to set forth a cause of action pursuant to 42 U.S.C. 1983 and the plaintiff invokes this Court's jurisdiction pursuant to Sections 1331 and 1343 of Title 28, United States Code. The remaining defendants now moves for summary judgment.

It is provided in 42 U.S.C. §1983 that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

In support of his motion Summary judgment Dr. Saavedra contends that the plaintiff has failed to exhaust the available administrative remedies and for this reason, he is entitled to summary judgment. Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. Biener v. Calio, 361 F.3d 206 (3d Cir.2004). In opposing a motion for summary judgment, a party cannot rest on mere reassertions of the matter raised in the complaint but must demonstrate by record evidence that material issues of fact exist for resolution at trial. Orsetti v. New Jersey, 71 F.3d 480 (3d Cir.1995).

In support of his motion, Dr. Saavedra states that the plaintiff has only filed one grievance, No. 105957, against him. The Prison Litigation Reform Act provides in 42 U.S.C. § 1997(e)(a) that:

> No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner

> confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

See: Santana v. United States, 98 F.3d 752 (3d Cir. 1996). Pennsylvania provides such a mechanism.[3] This requirement also has a procedural default component. Spruill v. Gillis, 372 F.3d 218 (3d Cir.2004).

In grievance No. 105957, the plaintiff contended that on December 29, 2004, Dr. Saavedra visited his cell as a result of prior litigation filed by the plaintiff against him; that the doctor inquired as to why the plaintiff was always sleeping and that the doctor stated he was discontinuing the plaintiff's antipsychotic medication because the plaintiff was faking his illness to achieve his removal from the L.T.S.U.[4]

The plaintiff did file an inmate grievance, dated January 18, 2005, at number 105957 along with ten other grievances which were administratively dismissed by the inmate grievance appeal officer as being untimely filed.[5] A verification that the plaintiff did not file a timely appeal was submitted by Carol Scire, the Superintendent's Assistant and Litigation Coordinator at the State Correctional Institution at Fayette.[6] She further verifies that no other grievance involving Dr. Saavedra was ever filed by the plaintiff.[7]

In response to Dr. Saavedra's motion, the plaintiff has submitted his opposition (Docket

---

[3] See: Administrative Directive 804 which is Exhibit B to the present motion.

[4] See: Exhibit C to the instant motion.

[5] See: Exhibit D to the instant motion.

[6] See: Exhibit E to the instant motion.

[7] Id.

4

No.103).[8] Appended to that determination, the plaintiff has supplied a March 9, 2005 memo from Sharon M. Burks, Chief grievance Coordinator stating that he is not entitled to further review since he has not appealed to the Superintendent.[9] However, the plaintiff has also submitted a copy of a March 1, 2005 memo from the Superintendent in which he states that he has reviewed the merits of the plaintiff's grievance and believes that it was properly resolved.[10] The plaintiff then represents that he filed a second appeal since the first determination was erroneous.[11] However, there is no real conflict of fact existing. Clearly the March 9, 2005 Burks letter is in error, in that the plaintiff did appeal to the Superintendent although at the time of Burks' response that appeal might not have been part of the record.

The plaintiff now contends that faced with this erroneous determination, he filed a second appeal which was deemed untimely. Thus, it would appear that the plaintiff's efforts to exhaust his administrative remedies were frustrated and it is recommended that defendant Saavedra's motion for summary judgment based on exhaustion be denied.

The Commonwealth defendants have also moved for summary judgment and allege in support thereof, that the plaintiff has failed to exhaust the available administrative remedies; that the incidents which he alleges did not occur; that he suffered no "actual injury" as a result of his alleged mail tampering; that he fails to demonstrate "adverse action" in his Issues 1,6 and12; that his allegations concerning contraction of a foot fungus do not state a violation of a protected

---

[8] See: Docket No. 103.

[9] See: Exhibit A to Docket No.103.

[10] See: Exhibit B to Docket No. 103.

[11] See: Docket No. 103 at ¶4.

interest; that he has no constitutionally assured right to be housed in any specific cell and that he fails to set forth what constitutionally protected rights were violated by the alleged "false entries" claim. In support of their motion several exhibits have been submitted.

In her declaration, Kristen Reisinger, an Administrative Officer in the Office of Inmate Grievances represents that during the period between March 19, 2004 and July 14, 2005, the petitioner filed sixty inmate grievances and "in none of the 60 grievances did Mr. Brown exhaust his administrative remedies."[12] Accordingly, the Commonwealth defendants' motion for summary judgment should be granted for failure to exhaust administrative remedies.

The movants have also filed documentation demonstrating that there is no substance to the plaintiff's claim that he was assaulted by institutional personnel on February 9, 2005.[13] In Exhibit D to the present motion, the movants have submitted a DVD of the two cell extractions involving the plaintiff on February 9, 2005. We have viewed that DVD and find nothing to suggest that any assault occurred. Rather, it demonstrates that as a result of the plaintiff having trashed two difference cells, he had to be removed to another cell each time. During the process of extraction, although several officers were present no showing of the use of excessive force occurred. Rather, the only injury about which the plaintiff complained was the scratch he received on his neck which medical personnel deemed minimal. This documentation is uncontradicted and there is nothing to support the plaintiff's allegations that he was subjected to an assault by institutional personnel.

---

[12] See: Exhibit A to Docket No.113. It should be observed that while this declaration would appear to cover the issue raised by Dr. Saavedra, there is no specific reference to that grievance. Additionally, as observed in the moving brief at p.5, during his incarceration, the plaintiff has submitted about 100 grievances (See: Exhibit M) and in only three of these, none of which are relevant here, has he exhausted the available remedies.

[13] See: Exhibits B, C and D to Docket No.113.

The plaintiff also contends that following this incident he was denied adequate food and water for a period of seven days. The Department of Corrections regulations permit serving modified meals which meet nutritional standards as well as water to inmates whose "behavior is such that service of hot food or use of standard service wares would present a danger to the inmate or staff..."[14] This is exactly what occurred following the February 9 incident, and the administrative records demonstrate that with the exception of dinner on day 6, the plaintiff refused the food with which he was provided.[15]

In addition, Exhibits B and D demonstrate that during the entire event on February 9, medical personnel were present and that the plaintiff was not denied medical attention; that his restraints were repeatedly examined and determined to be appropriate; that the cut which the plaintiff suffered were apparently "self inflicted " and that when removed from the restraint chair, the plaintiff was examined by the attending nurse and was not experiencing any difficulties.

The plaintiff also contends that his prison mail was interfered with but he has failed to allege any actual injury as a result of this action. Lewis v. Casey, 116 S.Ct. 2174 (1996). Thus, indeed, if the plaintiff is seeking to raise a claim of denial of access to the courts, his complaint is inadequate.

The plaintiff also contends that his housing in the LTSU was in retaliation for his repeated litigation. The Supreme Court in Beard v. Banks, 126 S.Ct. 2572 (2006),  recognized the necessity of prison authorities to impose limitations on those prisoners who "'exhibit behavior that is continually disruptive, violent, dangerous or a threat to the orderly operation of their assigned

---

[14] See: Exhibit E to Docket No.113.

[15] See: Exhibit F to Docket No.113.

facility.'" While actions taken may be appropriate, they cannot be improperly motivated, <u>Jacobs v. Beard</u>, 172 Fed. Appx. 452 (3d Cir. 2006). In the instant case, the record clearly demonstrates that the plaintiff is a disruptive inmate who as of March 31, 2006, had incurred 136 misconducts[16] and is in need of restriction to protect his own safety as well as that of other inmates and prison staff. What the record does demonstrate is that the plaintiff was placed in his housing assignment due to his totally disruptive conduct and not for any other reason, as his unsupported allegations suggest.[17] Additionally, an inmate does not possess a protected right to be housed in any particular institution or in any particular cell within that institution. <u>Smith v. Messinger</u>, 293 F.3d 641 (3d Cir.2002).

The plaintiff also contends that the shower area was filthy causing him to contract a fungus infection. While regrettable, such an incident does not arise to a constitutionally protected interest. <u>Farmer v. Brennan</u>, 511 U.S. 825 (1996); <u>Calhoun v. Thomas</u>, 360 F.Supp.2d 1264 (M.D.Ala.2005) (contraction of pubic lice and athletes foot not cognizable under §1983).

What we have here is an incorrigible inmate who prison authorities have waged a valiant effort to safely house. In return, he has been totally uncooperative and acted outrageously so that disciplinary action had to be imposed. The plaintiff now argues that implementation of this response to his conduct is inappropriate. As the Supreme Court noted in <u>Banks</u>, <u>supra.</u> it is the inmates own conduct which controls his destiny within the prison system. Modification of his

---

[16] See: Movants' brief at p.18.  It is also noted there and in Exhibit N to Docket No. 113, that as a result of all these incidents, the plaintiff will be housed in restrictive housing until at least 2013.

[17] The movants note that the plaintiff was removed from his housing on February 9 as a result of having destroyed two cells as well as his restraints and hurling feces from a cell and not in retaliation for his litigation.

conduct can lead to reductions in the limitations imposed upon him, however, continued dangerous and disruptive conduct only causes those limitations to continue.

Here, Brown has elected to act in an inappropriate manner over a considerable period of time and as a result has been subjected to repeated disciplinary action. He has only himself to blame for these results.

Thus, because the plaintiff's claims against the Commonwealth defendants are barred by his failure to exhaust administrative remedies, and even if this were not the case, the record demonstrates that his constitutional rights have not been inappropriately abridged, it is recommended that their motion for summary judgment be granted.

Within thirteen (13) days after being served, any party may serve and file written objections to the Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

s/Robert C. Mitchell,
United States Magistrate Judge

Entered: February 26, 2007